IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| MARGARET E. AUSBURNE, | ) |
| | ) Case No. 4:04-CV-00078 |
| Plaintiff, | ) |
| | ) |
| v. | ) **MEMORANDUM OPINION** |
| | ) |
| JO ANNE B. BARNHART, | ) |
| Commissioner of Social Security, | ) By: Jackson L. Kiser |
| | ) Senior United States District Judge |
| Defendant. | ) |
| | ) |

Before me is the *Report and Recommendation* of the United States Magistrate Judge recommending a reversal of the Commissioner's final decision which denied the Plaintiff's claim for benefits. The Defendant Commissioner filed *Objections to the Magistrate's Report and Recommendation*. I reviewed the Magistrate Judge's *Report and Recommendation*, the Defendant's *Objections*, and relevant portions of the record. The matter is now ripe for decision. For the reasons stated below, I hereby **adopt** the Magistrate Judge's *Report and Recommendation* and **overrule** the Defendant's *Objections*. The Commissioner's final decision denying the Plaintiff's claim for benefits is therefore **reversed,** and judgment is **granted** for the Plaintiff. This case is hereby **remanded** to the Commissioner for the sole purposes of calculating benefits and paying benefits to the Plaintiff, and this case is hereby **dismissed** from the docket of this Court.

## I. STATEMENT OF FACTS

Plaintiff Margaret Ausburne ("Plaintiff") is a 49-year-old individual with a high school education. Her past work experience includes employment as a quality inspector and EKG

1

technician. The Plaintiff allegedly became disabled on August 21, 2002, due to asthma, chronic obstructive pulmonary disease (COPD), emphysema, and pleurisy. *Rec. 13.*

On January 30, 2002, the Plaintiff underwent a cardiac stress test for atypical chest pain. Dr. James Isernia reported that the test was negative for cardiac ischemia and indicated that she had no chest discomfort during exercise. The doctor further noted that her exercise tolerance was fair. The doctor encouraged the Plaintiff to stop smoking and to increase her exercise and activity level. *Rec. 13, 116 – 119.* On February 8, 2002, the Plaintiff was treated in the emergency department for chest pain which was brought on by lifting heavy objects. *Rec. 125.* Attending physician Dr. Ralph Leonard diagnosed musculoskeletal chest pain and advised the Plaintiff to take one week off from work and not to lift anything heavy upon returning to work. *Rec. 126.*

On August 14, 2002, the Plaintiff was again treated in the emergency department for chest pain and for shortness of breath. Attending physician Dr. William Grover diagnosed chest pain, pleurisy, pneumonitis, and exacerbation of an acute asthma attack. *Rec. 14, 133.* The Plaintiff was treated with medication and sent home from the emergency department in an improved status. *Rec. 132.* In his report, Dr. Grover noted that the Plaintiff smoked one pack of cigarettes a day. *Rec. 14, 131.*

On September 25, 2002, the Plaintiff was again treated in the emergency department for chest pain and shortness of breath. *Rec. 14, 136 – 149.* Dr. Thomas Shields diagnosed chest pain, costochondritis, and bronchitis. The Plaintiff was treated with medication and was discharged in an improved condition. On October 2, 2002, Dr. Isernia examined the Plaintiff to follow up on problems relating to shortness of breath and dyspnea on exertion. *Rec. 14, 157.*

Dr. Isernia diagnosed a COPD exacerbation and emphysema. *Id.* The Plaintiff refused lab work or hospital admission. *Rec. 157.* Dr. Isernia prescribed medication and again advised the Plaintiff to stop smoking. *Rec. 14, 157.*

On December 11, 2002, the Plaintiff saw Dr. Isernia and complained of shortness of breath and dyspnea on exertion. *Rec. 14, 156.* The Plaintiff told the doctor that she was smoking one pack of cigarettes per day. *Rec. 156.* Plaintiff was unable to complete a pulmonary function test (PFT). *Rec. 14, 156.* Dr. Isernia noted that the Plaintiff had been "getting around okay," in spite of experiencing "chest wall and chest discomfort to her shoulder." *Rec. 14, 156.* Dr. Isernia noted that the Plaintiff's emphysema was "mild to moderate," he instructed her to continue with her medications, and strongly urged her to stop smoking. *Rec. 14, 156.*

Beginning in July 1998, Dr. George Luedke, a psychiatrist, has been treating the Plaintiff for an anxiety-related disorder. *Rec.14, 190.* According to Dr. Luedke, the medications he has prescribed have been successful in controlling the Plaintiff's symptoms. *Rec. 14, 189 – 208.*

In December 2002, Dr. Luedke evaluated the Plaintiff's mental status. *Rec. 14, 194.* Dr. Luedke indicated that the Plaintiff had not had any psychiatric hospitalizations. *Rec. 14, 190.* Dr. Luedke also indicated that the Plaintiff had a lack of energy and experienced dysphoria. *Rec. 14, 191.* He described her mood, affect, and emotional liability as "adequate" while describing her thought content and organization as "good and rational." Finally, he stated that the Plaintiff's concentration, persistence, and task completion were "good." *Rec. 14, 191 – 193.*

In March 2003, the Plaintiff requested a letter from Dr. Isernia supporting her disability claim. *Rec. 15.* The Plaintiff indicated to Dr. Isernia that she had been denied disability because her report did not state that she had COPD or emphysema. *Id.* Dr. Isernia indicated that he was

3

unable to write the letter without a pulmonary function test, which the Plaintiff was previously unable to complete, to quantify the amount of emphysema. *Id*.

On March 8, 2004, Dr. Isernia examined the Plaintiff who complained of back pain. *Rec. 15.* The Plaintiff reported that her left arm went numb when she lifted her arm. *Id*. An x-ray done on March 9, 2004, showed a mild degenerative alteration, with mild cervical spondylosis at C5-6 and C5-7. *Id.* On March 23, 2004, the Plaintiff reported continued neck and should pain. *Id*. Dr. Isernia prescribed Vioxx for pain and advised that she receive an MRI. *Id.*

On April 1, 2004, the Plaintiff underwent a cardiac stress test. *Rec. 15.* It was noted that the left ventricular systolic function was normal and that the claimant had no chest discomfort during exercise. *Id.* On April 29, 2004, Dr. Isernia reported that the Plaintiff had moderate-to-moderately severe emphysema and indicated that she continued to smoke. *Rec. 15.* Dr. Isernia opined that the Plaintiff's emphysema and COPD exacerbations impacted her ability to maintain employment. *Id.* Dr. Isernia stated that the claimant's COPD exacerbations would render her unemployable due to an excessive number of sick days. *Id.* Dr. Isernia noted that, in addition to emphysema and COPD exacerbations, the Plaintiff suffered from allergies, depression, agoraphobia, anxiety, mild-to-moderate coronary artery disease, and peripheral neuropathy. *Id.* Dr. Isernia further opined that the Plaintiff was 100% disabled due to her multiple illnesses and exacerbations of her breathing problems. *Id.* Dr. Isernia stated that her disability would last indefinitely. *Id.*

On October 23, 2002, the Plaintiff filed an application for Disability Insurance Benefits. The claim was denied initially and on reconsideration, and a request for hearing was timely filed. The claimant appeared and testified at a hearing held on May 4, 2004, in Danville, Virginia. On

4

May 24, 2004, an Administrative Law Judge ("ALJ") denied her claim. Plaintiff appealed the ALJ's decision to the Appeals Council, which denied review and adopted the ALJ's decision as the final decision of the Commissioner. The Plaintiff filed an appeal to this Court, and the Honorable B. Waugh Crigler, United States Magistrate Judge, filed a *Report* recommending reversal of the Commissioner's decision, granting judgment for th Plaintiff, and recommitting the case to the Commissioner for the sole purpose of calculating and paying benefits.

## II. STANDARD OF REVIEW

Congress limits judicial review of decisions by the Social Security Commissioner. This Court is required to uphold the decision where: (1) the Commissioner's factual findings are supported by substantial evidence; and (2) the Commissioner applied the proper legal standard. 42 U.S.C. § 405(g); *See also, Craig v. Chater,* 76 F.3d 585 (4th Cir. 1996). "Substantial evidence is . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The Fourth Circuit has further defined substantial evidence as being more than a scintilla but less than a preponderance. *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).

The Commissioner of Social Security is charged with evaluating the medical evidence, assessing symptoms, signs, and findings to determine the functional capacity of the claimant. 20 C.F.R. §§ 404.1527-404.1545; *Hays v. Sullivan*, 907 F.2d 1453 (1990); *Shively v. Heckler*, 739 F.2d 987 (4th Cir. 1984). The regulations grant the Commissioner latitude in resolving inconsistencies and the Court may only review the Law Judge's factual determinations for clear error. 20 C.F.R. §§ 404.1527 and 416.927. If the Law Judge's resolution of the conflicts in the

5

evidence is supported by substantial evidence, then this Court must affirm the Commissioner's final decision. *Laws v. Celebrezze*, 368 F.2d 640 (4th Cir. 1966).

It is well established that disability determinations are governed by the provisions of 20 C.F.R. § 404.1520 (2003). Under the five-step evaluation procedure, the ALJ must determine in sequence: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether he has a severe impairment; (3) if so, whether that impairment meets or equals the medical criteria of Appendix 1 which warrants a finding of disability without considering vocational factors; and (4) if not, whether the impairment prevents him from performing his past relevant work; and (5) if so, whether other work exists in significant numbers in the national economy that accommodate his residual functional capacity and vocational factors. *See Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). The burden of proof remains with the claimant through the fourth step; however, if the claimant successfully reaches step five, then the burden shifts to the Commissioner to show that other jobs exist in the national economy that the claimant can perform. *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992).

## III. DISCUSSION

In his *Report and Recommendation*, the Magistrate Judge stated:

> In the instant case, plaintiff carried her initial burden in the sequential evaluation process by demonstrating the presence of severe impairments that prevent her from performing her past relevant work. 20 C.F.R. §§ 404.1520 and 416.920; *Hunter v. Sullivan*, 993 F.2d 31 (4th Cir. 1992). Thus, the burden shifted to the Commissioner to demonstrate that alternate gainful activity was available to her, which the Commissioner could discharge in this case only by the presentation of vocational evidence because there were non-exertional limitations on the plaintiff's ability to perform work-related functions. *Hall v. Harris*, 658 F.2d 260 (4th Cir. 1981); *McLain v. Schweiker*, 715 F.2d 866 (4th Cir. 1983); *Coffman v. Bowen*, 829 F.2d 514 (4th Cir. 1987). In that connection, for the testimony of a VE to be relevant, the VE must have considered all the evidence in the record material to plaintiff's limitations and their effects on his [sic] work-related capacity. *Walker v. Brown*, 889 F.2d 47 (4th Cir. 1989). Otherwise, the Commissioner will not be viewed as

6

having properly discharged his [sic] sequential burden.

The Magistrate Judge concluded that the Commissioner did not meet her burden and therefore the ALJ committed clear and reversible error in denying the Plaintiff's benefits. The Magistrate Judge held that the ALJ did not give sufficient weight to the opinion of the Plaintiff's treating physician and did not properly assess the credibility of the Plaintiff. I agree.

In its *Objections to the Magistrate's Report and Recommendation*, the Defendant contends that the ALJ complied with Social Security regulations when he rejected Dr. Isernia's April 29, 2004 disability letter, and that the ALJ properly assessed Plaintiff's credibility.

### A.  The ALJ Erred in Rejecting Dr. Isernia's Disability Letter

The Magistrate Judge found that the ALJ erred because he discredited Dr. Isernia's disability "opinion on the basis of the isolated statement that the Plaintiff "'has been getting around okay.'" The Defendant argues that the Magistrate Judge is mistaken because the ALJ cited other reasons for discrediting Dr. Isernia's opinion that the Defendant is 100% disabled.

The Defendant states that Dr. Isernia's April 29, 2004 disability letter is inconsistent with his treatment notes as well as other evidence in the record. Specifically, the Defendant says in its *Objections* that the ALJ pointed out that Dr. Isernia opined in his treatment notes that the Plaintiff had only "mild to moderate emphysema," while Dr. Isernia's disability letter stated that the Plaintiff has "moderate-to-moderately severe emphysema." However, the Defendant fails to mention in its O*bjections* that these two findings by Dr. Isernia took place fourteen months apart – on December 2002 and on April 29, 2004, respectively. *Rec. 15, 17.* Even if the alleged distinction in Dr. Isernia's findings cannot be explained as a mere difference in semantics, it seems probably that the Plaintiff's emphysema worsened over those fourteen months; if so, then

7

Dr. Isernia's two distinct diagnoses are not inconsistent.

The Defendant further contends that the ALJ properly rejected Dr. Isernia's disability letter because Dr. Isernia never conducted pulmonary function testing ("PFT"). The Defendant further points out that Dr. Isernia himself noted in his records that such testing is required before disability due to emphysema can be found. However, the Defendant fails to mention in its *Objections* that Dr. Isernia attempted to perform pulmonary function testing on the Plaintiff on December 11, 2002, but the Plaintiff was unable to complete the testing. *Rec. 14, 156.* It seems that the Plaintiff's inability to finish the PFT provides substantial evidence that the Plaintiff suffers from disabling emphysema.

The Defendant argues that the ALJ's decision to reject Dr. Isernia's April 29, 2004 diability letter should stand because substantial record evidence supports it. The Defendant then cites Supreme Court precedent in an attempt to strengthen its argument: "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Federal Maritime Commission*, 383 U.S. 607, 620 (1966). In spite of the Defendant's argument, I cannot find and the Defendant does not cite substantial evidence in the record that warrants the ALJ's rejection of Dr. Isernia's April 29, 2004 disability letter.

### B. The ALJ Erred in Assessing the Plaintiff's Credibility

The Magistrate Judge found that the ALJ erred because he "based his decision to discredit the plaintiff and his assessment of her residual function capacity, in substantial part, on her daily activities." The Defendant argues that the Magistrate Judge is mistaken because the ALJ cited inconsistencies in the record and a lack of support by the medical records.

8

The first alleged inconsistency pointed out by the Defendant is that the Plaintiff continues to smoke while claiming that she is disabled due to breathing difficulties. While it may seem irrational that a Plaintiff in such a situation continues to smoke, the law does not require a person who is disabled due to breathing difficulties to cease smoking.

The Defendant also alleges that the Plaintiff is inconsistent in stating that she and her husband split household chores when her husband is disabled and presumably not capable of helping. However, the fact that the Plaintiff is able to do household chores, with or without her husband, does not necessarily mean that she is not disabled due to breathing difficulties. In addition, the Law Judge acknowledged that the Plaintiff was unable to perform any household chores without rest breaks.

Finally, the Defendant alleges that while the Plaintiff claims to be disabled, Dr. Isernia's clinical records show that she has only mild to moderate emphysema. However, the Defendant fails to point in its *Objections* that fourteen months after Dr. Isernia found the Plaintiff's emphysema to be mild to moderate in December 2004, Dr. Isernia found that the Plaintiff's emphysema was "moderate-to-moderately severe" on April 29, 2004.

The Defendants allege that the ALJ did more than merely list the Plaintiff's daily activities when considering her credibility. In spite of the Defendant's argument, I cannot find and the Defendant does not cite substantial evidence in the record that warrants the ALJ's finding that the Plaintiff is less than credible.

## IV. CONCLUSION

In this case, I must reject the Magistrate Judge's *Report and Recommendation* and affirm the ALJ's decision if I find that the ALJ's decision is "supported by substantial evidence." *Estep*

9

*v. Richardson*, 459 F.2d 1015, 1017 (4th Cir. 1972) (citing, *Rome v. Finch*, 409 F.2d 1329, 1330 (5th Cir. 1969)). Based on my assessment of the entire record, the Magistrate Judge's *Report and Recommendation*, and the *Defendant's Objections to the Magistrate Judge's Report and Recommendation*, I find that substantial evidence does not exist to support the Law Judge's decision that the Plaintiff retains the capacity for work that exists in significant numbers in the national economy. Based on this lack of substantial evidence, I find that the Law Judge committed clear error in coming to his decision. I therefore must overrule the Law Judge's holding that the Plaintiff is not under a "disability" as defined in the *Social Security Act*, and has not been at any time through the date of the Law Judge's Decision. *See*, 20 C.F.R. §404.1520(g).

For the reasons stated herein, I hereby **adopt** the Magistrate Judge's *Report and Recommendation* and **overrule** the Defendant's *Objections*. The Commissioner's final decision denying the Plaintiff's claim for benefits is therefore **reversed,** and judgment is **granted** for the Plaintiff. This case is hereby **remanded** to the Commissioner for the sole purposes of calculating benefits and paying benefits to the Plaintiff, and this case is hereby **dismissed** from the docket of this Court.

The clerk is directed to send a copy of this *Memorandum Opinion* and the accompanying *Order* to all counsel of record.

Entered this 20th day of December, 2005.

                                        s/Jackson L. Kiser
                                        Senior United States District Judge